# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR215 |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| JIMMIE L. PANKONIN, JR. | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Court on Jimmie L. Pankonin, Jr.'s (Pankonin) Motion to Suppress Search (Filing No. 13). The defendant is charged in the Indictment with possession with the intent to distribute fifty grams or more of a substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1) (Count I) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). **See** Filing No. 1. The charges stem from the search of Pankonin's residence on May 5, 2005. The defendant seeks to suppress evidence seized from the residence. The defendant contends a trash pull and subsequent search warrant were unlawful.

The Court held an evidentiary hearing for the motion to suppress on July 19, 2005. At the hearing, the Court heard the testimony of Nebraska State Patrol (NSP) Investigator Jamey Balthazor (Investigator Balthazor) and Kathy K. Pankonin (Kathy Pankonin). The Court received into evidence the affidavit and application for issuance of a search warrant (Exhibit 11) and twelve photographs (Exhibits 1-10; 101-102). A transcript (TR.) was prepared and filed in this matter on July 27, 2005. **See** Filing No. 22. The defendant filed a pre-hearing brief (Filing No. 14). The government did not file a pre-hearing brief and no post-hearing briefs were filed.

## FINDINGS OF FACT

Investigator Balthazor has been with the NSP for six years (TR. 18). Investigator Balthazor has been assigned to the drug investigation division for approximately one year (TR.

4, 18). During the first week of May 2005, Investigator Balthazor began an investigation of the trash at Pankonin's residence in Imperial, Nebraska (TR. 8-10). In connection with the investigation, but just prior to the instant court hearing, Investigator Balthazor took several photographs of the residence (Exhibits 1-10).[1] On May 1, 2005, Investigator Balthazor observed a trash can, or toter, near the shed at Pankonin's residence (TR. 8; Exhibit 3). On that date, the lid was down on the top of the trash can and no trash was overflowing (TR. 8). On May 3rd and 4th, the trash can was in the same location near the shed, however the lid was balanced over additional trash bags, which had been placed in the trash can (TR. 8-9). May 5, 2005, was the scheduled trash pick-up day for Pankonin's residence (TR. 34). On May 5, 2005, at 7:50 a.m., Investigator Balthazor observed the trash can had been moved approximately seventy feet away from the shed (TR. 34). The trash was near the alley and a red railing protecting utility meters in the normal place for trash pick-up (TR. 9-10, 16, 41; Exhibits 1, 7 and 10). At 7:55 a.m., Investigator Balthazor watched Pankonin drive away from the residence in an appliance service truck (TR. 12).

Investigator Balthazor had previously contacted the City of Imperial to have their trash pickup trucks available to stand by while Investigator Balthazor obtained Pankonin's trash (TR. 12-13). Investigator Balthazor borrowed a marked trash truck from a manager of the Public Works Department (TR. 13). Investigator Balthazor drove the truck into the alley next to the trash can, walked around the back of the truck without leaving the alleyway to remove trash (TR. 13-14). At 8:15 a.m., Investigator Balthazor removed the top five bags, the most recent trash, from the trash receptacle near Pankonin's residence (TR. 13). The Public Works Department retrieved the remainder of the trash later the same day (TR. 35, 39-40).

Kathy Pankonin works for the City of Imperial in the Public Works Department (TR. 37). Kathy Pankonin is also the defendant's third cousin (TR. 38). Kathy Pankonin testified the Public Works Department Sanitation Division picks up trash on the east side of town on Tuesdays and on the west side of town on Thursdays (TR. 37). Kathy Pankonin lives two houses away from the defendant and both residences are located in Imperial on the west side

---

[1] The photographs taken on May 5, 2005, were not developable. The photographs used during the hearing were taken by Investigator Balthazor on July 10 or 11, 2005 (TR. 19).

of town (TR. 38-39). Kathy Pankonin remembers receiving notice from her supervisor to interrupt the trash pick-up on May 5, 2005, and to wait approximately forty-five minutes to resume (TR. 39). The route included the defendant's residence, which was the final pick-up (TR. 39).

Investigator Balthazor transported the Pankonin's trash to the Nebraska State Department of Roads shop where he searched the trash (TR. 15). In the trash containers, mixed with other household trash, Investigator Balthazor found venue items for Pankonin and Tina Barnard (Barnard); plastic baggies with black and white residue later confirmed to be methamphetamine residue; plastic baggies with evidence of heat sealing and a white powdery residue; empty bottles of Ronson Butane fluid; pages of Barnard's address book; and a small flashlight with a black burnt residue consistent with methamphetamine smoking (Exhibit 11). Based on evidence contained in the trash, Investigator Balthazor applied for a search warrant (TR. 15; Exhibit 11). In the application, Investigator Balthazor stated the evidence found was indicative of the manufacture, use or distribution of controlled substances (Exhibit 11). Further, Investigator Balthazor stated drug users and dealers often discard their drug waste with household trash (Exhibit 11). A Chase County judge issued the search warrant for Pankonin's residence on May 5, 2005. Investigator Balthazor relied on the issuing judge's approval of the application when conducting the search of Pankonin's residence (TR. 17).

## LEGAL ANALYSIS

The defendant argues all evidence obtained on May 5, 2005, during the course of the search of trash and the search of his residence should be suppressed because the evidence was obtained unlawfully. Specifically, the defendant argues the investigator unlawfully obtained the trash from the residence's curtilage and the search warrant lacked probable cause.

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, **Search and Seizure**, § 3.7(d) at 372 (3d ed. 1996). As the Supreme Court stated in **Illinois v. Gates**, 462 U.S. 213, 238 (1983): "The

task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." **Gates**, 262 U.S. at 238. Thus, when viewing a search warrant, the court must look at the totality of the circumstances set forth in the affidavit. **See** *id.*; *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999). "The duty of the judge issuing a search warrant is to make a 'practical, common-sense decision' whether, considering all the circumstances, a reasonable person could have reason to suspect that evidence would be discovered. . . . Probable cause is a fair probability that contraband evidence of a crime will be found in the location to be searched." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996) (citations omitted); **see** *Gates*, 462 U.S. at 238. The Eighth Circuit has explained the issuing magistrate's obligation as follows:

> The task of the issuing magistrate is to make "a practical, **common-sense decision** whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *Id.* When the magistrate relied solely on the affidavit presented to him, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982), **cert. denied**, 459 U.S. 1201, 103 S. Ct. 1184, 75 L. Ed. 2d 431 (1983). **Affidavits must be read in "a common-sense and realistic fashion,"** *United States v. Cadwell*, 864 F.2d 71, 74 (8th Cir. 1988), **citing** *United States v. Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 746, 13 L. Ed. 2d 684 (1965). "Deference is accorded an issuing magistrate's probable cause determination . . ." *United States v. Brown*, 584 F.2d 252, 256 (8th Cir. 1978), **cert. denied**, 440 U.S. 910, 99 S. Ct. 1220, 59 L. Ed. 2d 458 (1979).

*United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (emphasis added), **see also** *United States v. Spinosa*, 982 F.2d 620, 626 (1st Cir. 1992) ("The affidavit must be 'viewed

in its entirety,' and 'must be given a common-sense and realistic, rather than a hypertechnical interpretation.'").

### A. Validity of Trash Search

"The warrantless search and seizure of the garbage bags left at the curb outside the [suspect's] house would violate the Fourth Amendment only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39 (1988).  The Court determined "society would not accept as reasonable respondents' claim to an expectation of privacy in trash left for collection in an area accessible to the public" *Id.* at 41 (**noting** "the unanimous rejection of similar claims by the Federal Courts of Appeals").  The *Greenwood* Court specifically cited *United States v. Kramer*, 711 F.2d 789, 791-794 (7th Cir. 1983).  In *Kramer*, the police officers removed trash bags from just inside a knee-high chain fence that ran along a street.  *Id.* at 794.  The *Kramer* court determined the police officers had trespassed on the property by either reaching over the fence or stepping across the fence onto the yard.  *Id.*  However, the court concluded neither act would have been "a threat to the peace and quiet of defendant's home," therefore while the police officers infringed upon the defendant's possessory interest in the land, they did not violate the Fourth Amendment.  *Id.*

The Eighth Circuit agrees with the Seventh Circuit that the "proper focus under *Greenwood* is whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable." *United States v. Comeaux*, 955 F.2d 586, 589 (8th Cir. 1992) (**citing** *United States v. Hedrick*, 922 F.2d 396, 400 (7th Cir. 1991)).  In *Comeaux*, the court assumed the garbage cans were within the curtilage of the home when a police officer, while remaining inside a van, reached out and pulled into the van a plastic garbage bag out of the garbage can in the alley behind the home.  *Comeaux*, 955 F.2d at 588-89.  In addition to whether a perimeter fence allows access or the garbage bag is accessible without leaving a vehicle, courts have evaluated whether the garbage cans are visible from a public thoroughfare in order to establish ready accessibility to the public.  **See** *United States v. Shanks*, 97 F.3d 977, 980 (7th Cir. 1996) (garbage can accessible in an

alleyway "because it is common for scavengers to snoop through garbage cans found in such alleys").

Each of the witnesses who testified stated the trash can was located near a utility meter near the alley, which was the customary location for the trash pick-up. Even if, as the defendant contends, the trash can was a couple feet closer to the defendant's residence, Investigator Balthazor needed only to take a few steps out of the roadway to reach the trash bags. The trash cans were not shielded from view of passers-by; the garbage cans were visible from the alleyway; and animals or other passers-by could easily gain access to the garbage cans. The trash can was set out for pick-up by the city. Accordingly, the defendant could harbor no reasonable expectation of privacy since the garbage was exposed to the public.

The Eighth Circuit "has repeatedly held that the discovery of drugs or paraphernalia in or around a suspect's house is significant on the issue of probable cause. For example, the discovery of marijuana seeds and stems in the defendant's trash was alone sufficient to establish probable cause to search a house." *United States v. Hernandez Leon*, 379 F.3d 1024, 1028 (8th Cir. 2004) (**citing** *United States v. Briscoe*, 317 F.3d 906, 908-09 (8th Cir. 2003)); **see** *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 951 (8th Cir. 2001) (holding the discovery of drug paraphernalia and an address book in the defendant's trash, which corroborated an informant's tip about drug dealing, established probable cause to search the house); **see also** *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 971 (7th Cir. 2003) (holding field tests conducted by police officers on suspected drug dealer's trash, which tested positive for probable presence of cocaine, along with informant's statements about dealer's drug involvement, were sufficient to support finding of probable cause). Affidavits for search warrants based entirely upon evidence garnered from garbage may be sufficient for the issuance of a search warrant for the premises. *Briscoe*, 317 F.3d at 908-09. The same is true where the trash pull corroborated an anonymous tip and demonstrated that drugs were present in the residence near in time to the application for a search warrant. *United States v. Reinholz*, 245 F.3d 765, 776 (8th Cir. 2001) (drug residue and documents identifying defendants as residents in trash supported probable cause); **see** *United States v. Koons*,

300 F.3d 985, 991 (8th Cir. 2002) (trash uncovered numerous marijuana stems, corroborating the tip that defendant was dealing drugs and increased the credibility of the informant). Furthermore, probable cause may be established for a search warrant where evidence from trash can reveals only personal-use quantity of illegal drugs by a resident. **See** *United States v. Colonna*, 360 F.3d 1169, 1175 (10th Cir. 2004).

The trash obtained by Investigator Balthazor revealed items of venue and evidence of illegal drugs both for personal use and possibly for distribution. The evidence was discovered in trash set out within two days of the application for the search warrant. Accordingly, the evidence seized from the defendant's garbage is sufficient for the issuance of a search warrant for the premises. *Briscoe*, 317 F.3d at 908-09. Additionally, the evidence found in Pankonin's trash can corroborates the other information held by the investigator and, under the totality of the circumstances, established probable cause for the issuance of the search warrant on that date. *Gates*, 462 U.S. at 238.

### B.   Staleness

The defendant contends the information contained in the application for the search warrant was stale because it contained allegations of drug trafficking activity in each of the years 2001 through 2004. "Probable cause must exist at the time of the issuance of the warrant, not merely at some earlier time." *United States v. LaMorie*, 100 F.3d 547, 554 (8th Cir. 1996). However, since there is no bright-line test for determining whether the information in an affidavit is stale, the statements in an affidavit must be judged by the particular circumstances of the case. "[T]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993). Where continuing criminal activity is suspected as was in this case, the passage of time is less important. *United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir. 1995). "Indeed, in investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information

stale." ***United States v. Formaro***, 152 F.3d 768, 771 (8th Cir. 1998) (internal quotations and citations omitted); **see *United States v. Smith***, 266 F.3d 902, 905 (8th Cir. 2001).

The affidavit contained indications that Pankonin was involved in methamphetamine trafficking well before the search warrant was issued on May 5, 2005. However, that information coupled with the remaining allegations in the application and evidence from the trash pull, the day before the warrant was executed, supports the timeliness of the warrant and the ongoing nature of the illegal drug distribution. Furthermore, if the allegations related to historical information were redacted, the application still contains probable cause for the search on May 5, 2005 based upon the trash pull. **See *Briscoe***, 317 F.3d at 908-09. Accordingly, the totality of the circumstances within the four corners of the affidavit established probable cause for the issuance of the search warrant on that date. ***Gates,*** 462 U.S. at 238. On this basis, the defendant's motion to suppress the search of the residence should be denied.

C.   **Anonymous Tip**

The defendant contends allegations made by confidential informants contained in the application were uncorroborated. An anonymous tip is insufficient in itself to support a finding of probable cause. ***United States v. Wells***, 223 F.3d 835, 839 (8th Cir. 2000) (**citing *Florida v. J.L.***, 529 U.S. 266, 270 (2000) (holding that an anonymous tip without more is insufficient to justify a police officer's stop and frisk of an individual). "Suitable corroboration must exhibit sufficient indicia of reliability in order for an anonymous tip to provide either a reasonable suspicion of criminal activity or probable cause to arrest or to search." ***Wells***, 223 F.3d at 839; ***United States v. Briley***, 726 F.2d 1301, 1306 (8th Cir. 1984) ("An anonymous tip from an informer may serve as a basis for probable cause as long as its reliability is established through corroboration."). "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." ***United States v. Morales***, 238 F.3d 952, 953 (8th Cir. 2001) (**quoting *United States v. Williams***, 10 F.3d 590, 593 (8th Cir. 1993)); **see also *Draper v. United States***, 358 U.S. 307, 313 (1959). The

8

Eighth Circuit, in numerous rulings on the reliability of confidential informant information, has phrased the test in the disjunctive: the informant must have a track record of supplying trustworthy information **or** the information must be substantiated by independent evidence. **See, e.g.,** *Morales*, 238 F.3d at 953; *Mueller v. Tinkham*, 162 F.3d 999, 1003 (8th Cir. 1998); *Walden v. Carmack*, 156 F.3d 861 (8th Cir. 1998); *Williams*, 10 F.3d at 593.

In this case, the application for the search warrant contains allegations made by a confidential informant about Pankonin. Additionally, the application relies on allegations by named informants and other instances. Specifically, the February 5, 2005, and April 9, 2005, traffic stops of Barnard, Pankonin's girlfriend, who was found with methamphetamine. On the later occasion, the Barnard was driving Pankonin's vehicle and the arresting officer made a photocopy of pages of an address she was carrying.

The confidential informant's information, by itself, does not provide sufficient probable cause to support the search warrant. However, Investigator Balthazor corroborated the information by combining it with other investigations and conducting a trash pull. Investigator Balthazor found evidence of methamphetamine use and suspected distribution. Accordingly, the totality of the circumstances within the four corners of the affidavit established probable cause for the issuance of the search warrant on that date. *Gates*, 462 U.S. at 238. On this basis, the defendant's motion to suppress the search of the residence should be denied.

Furthermore, even if the court found the affidavit did not contain sufficient information to establish probable cause, the *Leon* good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow the officer to believe probable cause existed. *United States v. Leon*, 468 U.S. 897, 923 (1984). Accordingly, viewing the totality of circumstances, the affidavit was sufficient to establish probable cause for the issuance of the search warrant. Therefore, the motion to suppress should be denied. Upon consideration,

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Jimmie L. Pankonin, Jr.'s Motion to Suppress Search (Filing No. 13) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 15th day of September, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge